Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiffs*
And the putative class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON, individually, and on behalf of those similarly situated, | Case No.:  [Case No.] |
| Plaintiffs, | **DISCOVERY MATTER** |
| v. | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA DUCES TECUM AGAINST THIRD PARTY VAJIRA SAMARARATNE; MEMORANDUM OF POINTS AND AUTHORITIES |
| VAJIRA SAMARARATNE, | |
| Respondent. | |
| | Judge: Hearing: Time: Discovery Cutoff: December 20, 2024 Pretrial: September 3, 2025 |

## NOTICE OF MOTION AND MOTION TO COMPEL

TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on _____, at _____, or as soon thereafter as the matter may be heard, in Courtroom ___, on the ___ Floor of the Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, before the Hon. _____, Plaintiffs KURT MORALES II, BRANDON CALLIER, and LUCAS HORTON ("Plaintiffs"), by and through their attorneys of record, will and hereby do move the Court under Fed. R. Civ. P. 45, 26, and 37, for an Order overruling objections and compelling responses and production from VAJIRA SAMARARATNE ("Respondent" or "Samararatne") to Plaintiffs' Subpoena, attached as Exhibit M to Declaration of Mark L. Javitch ("Javitch Decl.") and awarding Plaintiffs attorneys' fees. Respondent has lived in Irvine, California at all times relevant to this matter.

For the reasons set forth below, Plaintiffs have a substantial need for the documents responsive to this Subpoena so that Plaintiffs may satisfy the elements of their claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and for their motion for class certification.  Further, the needed discovery is relevant, proportional to the needs of the case, and producing it will not be unduly burdensome. Mr. Samararatne's objections are unsupported.

Plaintiffs complied with L.R. 37-1 by sending a meet and confer letter containing all issues in dispute, but Samararatne's counsel refused to meet and confer on the telephone. Accordingly, Plaintiffs submit this motion in the form of a motion to compel instead of a joint stipulation.

This Motion is based on this notice of motion and motion, the memorandum of points and authorities, the Declaration of Mark L. Javitch, and the exhibits attached thereto.

Dated: April 12, 2024                    Respectfully submitted

By: /s/ Mark L. Javitch
Mark L. Javitch

*Attorneys for Plaintiffs*
And the putative class

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION .................................................................1

II.   FACTUAL BACKGROUND...............................................3

    A. The Parties and Underlying Suit ...........................................3

        i.  Plaintiffs ...................................................................3

        ii. Defendants VSC Sellers .............................................4

        iii. Respondent Mr. Samararatne ....................................4

    B. Underlying Litigation.............................................................4

    C. Samararatne Responds to Plaintiffs' Subpoena ....................5

    D. Plaintiffs Attempted to Meet and Confer, But Samararatne Did Not Comply with L.R. 37-1 ....................................................5

III.  LEGAL STANDARD ..........................................................6

IV.   LEGAL ARGUMENT...........................................................7

    A. Samararatne Failed to Comply with L.R. 37-1 .....................8

    B. Plaintiffs' Requests Are Relevant .........................................8

    C. Plaintiffs Have a Substantial Need.........................................9

    D. Samararatne Failed to Conduct a Reasonable Search for Responsive Documents...............................................................9

    E. Samararatne's Objections Should be Overruled ................10

        i.  Samararatne's Relevance Objections Should be Overruled.....10

        ii. Samararatne's Vague and Ambiguous Objections Should be Overruled ...............................................................11

        iii. Samararatne's Proportionality Objections Should be Overruled ...............................................................11

        iv. Samararatne's Objections That Documents Are Not In His "Possession" Should Be Overruled...........................12

        v.  Samararatne's Objections that he "Already Provided Information to Pelican" Should be Overruled .........12

        vi. Samararatne's Objections that the Requests Do Not Concern a Party to the Lawsuit Should be Overruled................12

        vii. Samararatne's General Objections Are Waived.......13

F.  THE COURT SHOULD AWARD PLAINTIFFS' ATTORNEYS
FEES.................................................................................................13

V.  CONCLUSION.............................................................................................14

# TABLE OF AUTHORITIES

## *District Court Cases*

*Brevoort v. G4S Secure Sols. (USA) Inc.*,
  No. CV 20-5432-CJC (PVCx) (C.D. Cal. June 21, 2022) .....................................13

*Chambers v. Whirlpool Corp.*,
  No. CV 11-1733 (C.D. Cal. Aug. 12, 2016) ......................................................6

*Constr. Laborers Trust Funds for S. California Admin Co. v. D T S Enter., Inc.*,
  No. EDCV 22-867-JGB (KKX) (C.D. Cal. Mar. 8, 2023) .....................................14

*DIRECTV, Inc. v. Trone*,
  209 F.R.D. 455, 458 (C.D. Cal. 2002) ............................................................6

*Garibay v. Caravan Realty, LLC*,
  2021 U.S. Dist. Lexis 195387 (C.D. Cal. June 21, 2021) .....................................8

*Gonzales v. Google, Inc.*,
  234 F.R.D. 674, 685 (N.D. Cal. 2006) ............................................................9

*Gradillas Court Reporters, Inc. v. Cherry Bekaert LLP*,
  No. 4:18-mc-80064-KAW (N.D. Cal. Apr. 30, 2018) ..........................................9

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
  CV 17-7639-SJO-KSx (N.D. Cal. Apr. 29, 2019) ..............................................9

*Lopez v. Don Herring, Ltd.*,
  327 F.R.D. 567, 580 (N.D. Tex. Aug. 1, 2018) ................................................11

*Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*,
  No. 2:11-cv-3471 KJM AC (C.D. Cal. Aug. 17, 2016) .......................................13

*Ochotorena v. Adams*,
  No. 1:05-cv-01525-LJO-DLB (E.D. Cal. Mar. 19, 2010) .....................................9

*Polaris Innovations, Inc. v. Kingston Tech. Co. Inc.*,
  No. CV 16-00300 CJC (RAOx) (C.D. Cal. Feb. 14, 2017) ..................................11

*Rogers v. Giurbino*,
  288 F.R.D. 469, 485 (S.D. Cal. 2012) ...........................................................10

*Soto v. City of Concord*,
  162 F.R.D. 603, 610 (N.D. Cal. 1995) ............................................................6

*Sandoval v. Yeter*,
  No CV 18-0867-CBM-JPRx (C.D. Cal. July 29, 2019) .........................................8

*Superior Comm'ns v. Earhugger, Inc.*,
  257 F.R.D. 215, 217 (C.D. Cal. 2009) ......................................................11, 13

*Transcor, Inc. v. Furney Charters, Inc.*,
  212 F.R.D. 588, 591 (D. Kan. 2003) .............................................................10

### *District Court Cases* (cont'd)

*Uribe v. McKesson*,
  No. 08-cv-1285 DMS (NLS) (E.D. Cal. Mar. 8, 2010) ...........................................9

*Valdez v. Genesis Healthcare LLC*,
  No. 2:19-cv-00976-DMG-JC (C.D. Cal. Sept. 7, 2021) .......................................12

*Walker v. Lakewood Condo. Owners Ass'n,*
  186. F.R.D. 584, 587 (C.D. Cal. 1999) ..............................................................13

*Walt Disney Co. v. DeFabiis,*
  168 F.R.D. 281, 284 (C.D. Cal. 1996) ..............................................................12

### **Statutes, Rules, and Other Authorities**

Fed. R. Civ. P. 26 .............................................................................. 6-7, 9

Fed. R. Civ. P. 45 .................................................................................. 6

Fed. R. Civ. P. 37 ................................................................................ 13

C.D. Cal. L.R. 37 ....................................................................... 3, 5-8, 13

42 U.S.C. § 227 ........................................................................... 1, 3-4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The underlying action, *Morales v. Sunpath Ltd., et al.*, No. 20-cv-1376 JLH-SRF (D. Del.) ("Underlying Action"), is a class action against numerous companies that conspire to sell vehicle service contracts ("VSCs," colloquially and misleadingly referred to "extended auto warranties") through illegal robocalling. The illegal robocalling is conducted by small group of serial offenders who operate a web of fly-by-night entities that form and dissolve shortly thereafter to attempt to avoid liability for their unlawful conduct including violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Plaintiffs' Fifth Amended Complaint ("5AC") (Dkt. 164) sets forth details showing that numerous businesses all run by Gustav Renny ("Renny") that market VSC's are a succession of sham entities created, operated, and dissolved to avoid liability for TCPA violations. *See* Exhibit A.

Samararatne participates in several aspects of the placement of the unlawful robocalls, including running call centers that place and transfer calls, and co-owns and runs one or more of these shell entities with Renny, including Defendant Pelican Investment Holdings Group, LLC ("Pelican"). Samararatne also ran a company called "Market Management Solutions" ("MMS") that initiated robocalls using prerecorded voices and transferred calls to Pelican and other companies associated with Renny, including Pelican, Affordable Auto Shield, Inc. ("AAS") National Auto Protection Corp. ("NAPC"), Assured Auto Group, Inc. ("Assured"), Affordable Car Cure LLC ("Affordable"), and National Car Cure LLC ("NCC"), Celtic Marketing, LLC d/b/a VAD, and others.

Renny and Samararatne, through these companies, have generated hundreds of complaints and dozens of civil and regulatory actions. *See, e.g.*, State of Kansas Consent Judgment, Franklin County Ohio Complaint, Compilation of FCC Complaints, Exhibits B-D to the Javitch Decl.

During the pendency of the Underlying Action, the Attorney General of Ohio filed suit and settled with Renny, Samararatne, and several associated companies. The Ohio Attorney General reports:

> The defendants marketed auto "warranties" via outbound telephone solicitations. They contracted with lead-generating companies that initiated telephone calls using artificial or prerecorded voices to deliver a message. The prerecorded voice message failed to properly identify the calling party and deceptively represented that the call was concerning extending the consumer's auto warranty and was affiliated with auto manufacturers; in fact, the call was about the sale of vehicle service contracts. For the phone calls that resulted in the sale of these service contracts, the defendants failed to secure a signed written confirmation of a verbal agreement that included all the required information to obtain copies of signed contracts. The Attorney General's Office filed a lawsuit against the defendants on Jan. 4, 2023, for violations of the Telephone Solicitation Sales Act and the Consumer Sales Practices Act. The case was resolved against Pelican Holdings, Gustav Renny, Vajira Samararatne, Ronald Eddington Jr., Joseph Hill Jr., Falcon Endeavors and MB Holdings Group with four separate consent judgments spanning the seven defendants on Oct. 9, 2023. The four settlements included a declaratory judgment, a permanent injunction, and a $200,000 civil penalty with $100,000 suspended on the condition of full compliance with the terms of the settlement.

*See* 2023 Consumer Protection Report by the Office of the Ohio Attorney General, Exhibit E p. 37.

Despite these regulatory actions in the public record, Defendants in the Underlying Action continue to refuse to produce any related documents of call logs, recordings, or correspondence, necessitating numerous miscellaneous actions. Because of the web of active sellers, dissolved sellers, inscrutable acronyms such as "AAP" shared by many companies, "consultants," and "independent contractors," Plaintiffs have largely been forced to pursue discovery from third parties via subpoenas to locate relevant documents, who often fail to comply, which has required several miscellaneous actions prior to this one. *See e.g.*, *In Re National Car Care LLC*, No. 2:23-mc-111-KJN, 2023 U.S. Dist. LEXIS 73157, 2023 WL 3093631 (E.D. Cal. April 26, 2023) (attached as Exhibit F); No. 3:22-mc-00093-JCH In Re: ROI Network, LLC (D. Conn. Jan. 8, 2023) (attached as Exhibit G).

Defendants claim that MMS and Pelican are dissolved, defunct, and do not possess requested documents (despite Mr. Samararatne currently listing MMS on his LinkedIn profile, *See* Exhibit J). Pelican is no longer defending the Underlying Action, has failed to comply with Court Orders regarding discovery, and Pelican's lawyers' Motion to Withdraw as Counsel was recently denied. *See* Dkt. 258 attached as Exhibit V. Samararatne was and is involved with these entities, owned and participated in the activities of MMS and Pelican. Samararatne has relevant documents by virtue of his access to the email accounts he used while acting on MMS' and Pelican's behalf, their call detail records and call logs, audio files of prerecorded messages, and recordings of phone calls. MMS allegedly initiated phone calls and transferred calls to Pelican and AAS to close the sales.

Samararatne's response to the subpoena was to assert only objections and his counsel refused to meet and confer on the telephone as required by this Court's L.R. 37-1. In response to Plaintiffs' Subpoena, Samararatne asserted boilerplate objections, refused to provide documents, failed to perform a good faith reasonable search for documents, and asserted meritless objections. The relevance and benefit of this discovery outweighs any minimal burden or expense to Samararatne.

Accordingly, Plaintiffs hereby request that the Court grant this motion to compel, overrule Samararatne's unsupported objections, order him to conduct a reasonable inquiry and produce responsive documents, and award Plaintiffs attorney's fees.

## II.     FACTUAL BACKGROUND

### A.     The Parties and Underlying Suit

#### i.     Plaintiffs

Plaintiffs are individuals who allege they received unsolicited robocalls selling VSC's sold and serviced by Defendants. The calls violated both 42 U.S.C. 227(b) by containing artificial or prerecorded voice messages instructing Plaintiffs that their auto warranty expired and they should "press one" to renew and 227(c) because Plaintiffs were registered on the Federal Do Not Call Registry. The scheduling order is attached as Exhibit H.

### ii.     Defendant VSC Sellers

Defendants are several companies that cooperate to sell, administer and finance VSC's to consumers. Amtrust underwrites the VSC contract and appoints Sunpath to sign up VSC sales entities. Sunpath signs up multiple sales entities operated by Gustav Renny. Renny's entities include National Auto Protection Corp., Assured Auto Group, Inc., Affordable Car Care LLC, Advanced Auto Shield, Pelican Investment Group, Falcon Endeavors,  entities generating dozens complaints nationwide. Mepco advances funding to Sunpath and the VSC sales entities in exchange for monthly customer payments. The VSC sales entities named in the underlying case are Pelican and AAS. 5AC, ¶¶ 15-19. Sunpath is currently in default. Counsel for Pelican has moved to withdraw, but their motion was denied.

### iii.     Respondent  Samararatne

Samararatne is part owner of Pelican. Plaintiffs named Pelican as a defendant in this lawsuit after Plaintiffs received unsolicited phone calls from Pelican in 2021, *while the underlying litigation was pending*. 5AC ¶¶ 206–07. Pelican was formed by Renny. Renny sold his ownership interest in Pelican to Samararatne in exchange for a consulting role in which Renny's shell company Falcon Endeavors would be entitled to a share of Pelican's profits. The arrangement was an apparent ploy to hide Renny's involvement in Pelican from Plaintiffs and government regulators. Samararatne signed the verification for Pelican's interrogatory responses in the Underlying Action.

Samararatne also operated other call centers such as MMS. MMS and Pelican initiated  prerecorded voice calls and in some cases transferred consumers to other call centers for closing the solicitation of VSCs.

### B.     Underlying Litigation

The underlying litigation is a putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. On October 9, 2020, Plaintiffs filed a putative Class Action Complaint in the District of Delaware alleging violations of the TCPA. *See Morales v. Sunpath, Ltd*., et. al., Case No. 1:20-cv-01376-JLH-SRF. On July 20, 2023,

Plaintiffs filed the 5AC which sets forth details showing that Gustav Renny's multiple businesses that market VSC's are a succession of sham entities created, operated, and dissolved to avoid liability for TCPA violations. *See* Exhibit A. Defendants have gone to great lengths to avoid responding to discovery by claiming they do not have documents "in their possession" and Plaintiffs have largely been forced to obtain discovery from third parties.

Renny, through numerous companies, has generated hundreds of complaints, and dozens of civil and regulatory actions. The 5AC alleges that the same operation and persons who repeatedly robocalled Plaintiffs (and millions of others U.S. consumers) without consent are continuing to do so as AAS using the same tactics, equipment, and resources. AAS admits that "MMS (Marketing Management Solutions) "transfers calls to [AAS]." Answer to Interrog. No. 4. Renny "handles compliance matters for AAS." *See* Exhibit I. Samararatne is the CEO of MMS. *See* Exhibit J.

### C.      Samararatne Responds to Plaintiffs' Subpoena

On December 20, 2023, Plaintiffs provided notice that they would serve a subpoena in the underlying litigation on Samararatne. *See* Exhibit M. On January 12, 2024, Counsel for the AAS in the underlying litigation emailed stated "We will be moving to quash the subpoena to Vajira S on the basis of the Apex doctrine." *See* Exhibit N. On January 24, 2024, instead of moving to quash, Counsel then sent formal responses on behalf of Samararatne containing mostly objections and producing no documents. *See* Exhibit O.

### D.      Plaintiffs Attempted to Meet and Confer, But Samararatne Did Not Comply with L.R. 37-1

On February 21, 2024, Plaintiffs sent a L.R. 37-1 meet and confer letter to counsel for Samararatne containing the disputes herein and requesting to meet and confer on the telephone. *See* Exhibit P. On February 29, 2024, Plaintiffs' counsel emailed stating "L.R. 37-1 also requires a telephonic meet and confer within 10 days of the meet and confer letter. Please let us know when you are available on Friday or Monday." *See* Exhibit Q. On March 4, 2024, Plaintiffs again requested to meet and confer on the telephone, stating "The

deadline under C.D. Cal. L.R. 37-1 for Mr. Samararatne to meet and confer on the phone was today. Unless we can meet and confer on the phone tomorrow, Plaintiffs will have to file their motion to compel and inform the Court that Mr. Samararatne is refusing to meet and confer on the phone." *See* Exhibit R. Samararatne provided "amended" responses to the subpoena on March 4, 2024, that simply asserted new or different objections, and still refused to produce any responsive documents. *See* Exhibit S. On March 5, 2024, Plaintiffs' counsel again requested to meet and confer, stating "When can you discuss your client's position on the phone? I have asked several times. If you do not respond with a time to meet, I will have to proceed noting your refusal." *See* Exhibit T. Counsel for Samararatne responded but refused to make themselves available for a telephonic meet and confer. *See* Exhibit U. As of the date of this filing, Samararatne has not agreed to meet and confer on the phone regarding his responses. Javitch Decl. ¶ 35.

### III.   LEGAL STANDARD

Generally, discovery may be obtained "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Motions to enforce a subpoena must be brought in the district where compliance is required. Fed. R. Civ. P. 45(d)(2)(B)(ii); *Chambers v. Whirlpool Corp*., No. CV 11-1733 FMO (JCGx), 2016 WL 9451360, 2016 U.S. Dist. LEXIS 194921, at *10 (C.D. Cal. Aug. 12, 2016). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections. *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

Before filing a discovery motion, counsel for the parties must meet and confer in a good faith effort to eliminate the need for a hearing on the motion or eliminate as many of the disputes as possible. L.R. 37-1. It is "the responsibility of counsel for the moving party to arrange for this conference." *Id*. Counsel the opposing party must confer with counsel for the moving party within 10 days after a request for a conference of counsel. *Id*. If the

dispute is not settled, the parties must prepare a "written stipulation" to "be filed and served with the notice of motion." L.R. 37-2. The stipulation "must be set forth in one document signed by both counsel" and "contain all issues in dispute and, with respect to each such issue, the contentions and points of authorities of each party." L.R. 37-2.1.

## IV.   ARGUMENT

Samararatne failed to comply with L.R. 37-1 and his objections are unsupported. Plaintiffs request that the Court overrule his objections and order him to produce documents responsive to the Subpoena.

### A.   Samararatne Failed to Comply with L.R 37-1

C.D. Cal. L.R. 37-1 provides that, "[p]rior to the filing of any motion relating to discovery pursuant to Fed. R. Civ. P. 26/37, counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought. L.R-37-1 states that "It shall be the responsibility of counsel for the moving party to arrange for this conference… Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party shall confer with counsel for the moving party within ten (10) days after the moving party serves a letter requesting such conference."

Here, Plaintiffs satisfied L.R. 37-1 by emailing all issues in dispute and diligently seeking to meet and confer with  Samararatne regarding his lack of responses to the Subpoena. On February 21, 2024, Plaintiffs made their first attempt to meet and confer. Plaintiffs emailed counsel for Mr. Samararatne Plaintiffs' 37-1 meet and confer letter containing all issues in dispute. *See* Exhibit P.

On February 29, 2024, Plaintiffs again requested a pre-filing conference of counsel pursuant to Local Rule 37-1. *Id*. Plaintiffs emailed: "Please let us know when you are available." *Id*. *See* Exhibit Q.

On March 4, 2024, Plaintiffs made a third attempt to meet and confer on the telephone. Plaintiffs emailed: "The deadline under C.D. Cal. L.R. 37-1 for Mr. Samararatne to meet and confer on the phone with Plaintiffs was today. Unless we can meet and confer on the phone tomorrow, Plaintiffs will have to file their motion to compel and inform the court that Mr. Samararatne is refusing to meet and confer on the phone. *See* Exhibit R.

On March 5, 2024, Plaintiffs made a fourth attempt to meet and confer on the telephone. Plaintiffs emailed: "When can you discuss your client's positions on the phone? I have asked several times. If you do not respond with a time to meet, I will have to proceed noting your refusal." *See* Exhibit T. Samararatne's counsel responded by saying "we thought we had addressed your concerns" but again refused to engage in a telephone conference. *See* Exhibit U.

Samararatne blatantly refused to comply with L.R. 37-1. More than ten days have passed since Plaintiffs sent their 37-1 letter, and Samararatne refused on four occasions to meet and confer on the phone regarding his responses. Samararatne provided "amended responses" which only provided additional objections and did nothing to satisfy the meet and confer requirement. Samararatne also failed to obtain any court order that would be required to extend the due date under 37-1. Accordingly, Samararatne violated 37-1, which forced Plaintiffs to file this motion instead of cooperating on a L.R. 37-2 stipulation. *See Garibay v. Caravan Realty, LLC*, No. 2:19-cv-10910-JDE, 2021 U.S. Dist. LEXIS 195387, 2021 WL 4620954, at *2 (C.D. Cal. June 21, 2021) ("Plaintiff has made a sufficient showing that Defendant's counsel failed to confer in a timely manner, thereby excusing Plaintiff from Local Rule 37's joint stipulation requirement.") (citing C.D. Cal. L.R. 37-2.4); *Sandoval v. Yeter*, No. CV 18-0867-CBM (JPRx) (C.D. Cal. Jul. 29, 2019) ("This Court's procedures on its website mandate '[s]trict compliance with Local Rule 37.'").

### B. Plaintiffs' Requests Are Relevant

Plaintiffs' discovery requests are standard requests in TCPA class actions and seek sources of phone numbers (leads), call logs, telephone equipment, and relevant communications and contracts with vendors and clients. The Court in the Underlying Action has recently entered an Order on party discovery confirming the relevance of these types of discovery. *See* Dkt. 258, attached as Exhibit V.

### C. Plaintiffs Have a Substantial Need

Plaintiffs have a substantial need for the requested discovery because Plaintiffs have the burden of proving causation and damages in their TCPA claims on a classwide basis. The requested documents are relevant to show that Defendants are liable for placing prerecorded phone calls to phone numbers registered  on the Do Not Call registry and/or using an artificial or prerecorded voice without their prior express written consent. *See Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*, No. 4:18-mc-80064-KAW, 2018 WL 2010978, 2018 U.S. Dist. LEXIS 72419, *2 (N.D. Cal. Apr. 30, 2018) (ordering production that could aid in proving the essential elements of the case). The substantial need for the requested discovery outweighs any privacy concern from disclosure, especially because the confidential information can be produced pursuant to the protective order entered in the Underlying Action. *See Gonzales v. Google, Inc*., 234 F.R.D. 674, 685 (N.D. Cal. 2006) (compelling production where substantial need outweighed potential for harm from disclosure); *Juno Therapeutics, Inc. v. Kite Pharma, Inc*., CV 17-7639-SJO-KSx, 2019 WL 3069009, 2019 U.S. Dist. LEXIS 128027 *16 (N.D. Cal. Apr. 29, 2019) (Subpoena satisfied the required showing of a substantial need for discovery).

### D. Samararatne Failed to Conduct a Reasonable Search for Responsive Documents

In responding to a subpoena pursuant to Rule 45, a reasonable inquiry must be made, and if no responsive documents or tangible things exist (Fed. R. Civ. P. 26(g)(1)), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence. *Uribe v.*

*McKesson*, No. 08-cv-1285 DMS (NLS), 2010 U.S. Dist. LEXIS 35359, 2010 WL 892093, at *2–3 (E.D. Cal. Mar. 8, 2010). If responsive documents do exist but the responsive party claims lack of possession, control, or custody, the party must so state with sufficient specificity to allow the court to (1) conclude that the responses were made after a case-specific evaluation, and (2) evaluate the merit of that response. *Ochotorena v. Adams*, No. 1:05-cv-01525-LJO-DLB (PC), 2010 U.S. Dist. LEXIS 144402, 2010 WL 1035774, *3–4 (E.D. Cal. Mar. 19, 2010). Samararatne entirely failed to allow the Court to determine the details of the search and whether the search was reasonable. There is absolutely no description of his search. *See Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) (A responding party "must briefly describe the search to allow the Court to determine whether it is reasonable."). Given the fact that the Court in the Underlying Action has rejected the contention that the defendants do not have possession, custody, or control over the identical information, (*see* Dkt. 258, attached as Exhibit V), it is incumbent on Samararatne at the very least to detail his search for responsive documents, explain where and how he searched, where he did not search, and where responsive documents are likely to be located. Notably, MMS has also refused to respond to a subpoena directed to it, and Pelican is now in violation of the Court Order compelling discovery responses. Pelican's attorney sought to withdraw, but the Court denied the motion to withdraw pending Pelican's compliance with the Court Order compelling discovery responses.

### E.   Samararatne's Objections Should Be Overruled

Samararatne responded with nearly the same boilerplate response to each and every request. None of Samararatne's objections are supported. Plaintiffs' requests are relevant and Defendants' objections should be overruled.

#### i.   Samararatne's Relevance Objections Should Be Overruled

Samararatne objects to Requests seeking call logs and communications with Defendants related to placing phone calls on the grounds that the requests seek irrelevant information. However, this objection is unsupported. Plaintiffs' requests are all standard requests in a TCPA action and relate to how phone numbers were gathered and how Class

members' calls were initiated and transferred to Defendants. This is directly related to the substance of this dispute, the allegedly illegal telemarketing calls. Relevancy is broadly construed for purposes of discovery. ". . .a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Transcor, Inc. v. Furney Charters, Inc*., 212 F.R.D. 588, 591 (D. Kan. 2003). For objections to discovery on relevance grounds, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc*., 257 F.R.D. 215, 217 (C.D. Cal. 2009). Respondent's general objection here as to relevance fails to fulfill its burden with specificity. Accordingly, these objections should be overruled.

### ii.   Samararatne's Vague and Ambiguous Objections Should Be Overruled

Samararatne objects because the requests are purportedly vague and ambiguous. The party "objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity…and, [i]f a party believes that the request is vague, that party [should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *Lopez v. Don Herring Ltd*., 327 F.R.D. 567, 580 (N.D. Tex. Aug. 1, 2018). Respondent has failed to do so. Accordingly, these objections should be overruled.

### iii.   Samararatne's Proportionality Objections Should Be Overruled

Samararatne also objects that the requests are disproportionate, but he only mentions the term and does not attempt to analyze the proportionality factors. This is insufficient to sustain an objection on proportionality. *See Polaris Innovations Ltd. v. Kingston Tech. Co., Inc*., Case No. CV 16-00300 CJC (RAOx), 2017 U.S. Dist. LEXIS 222261, 2017 WL 3275615, at *17, (C.D. Cal. Feb. 14, 2017) (assertions of lack of proportionality, without more, are insufficient); *id*. at 20 ("Nor has [responding party] shown that this information

is not reasonably accessible." Further, the request is not possibly disproportionate because the requested data, i.e., calling logs, is a text file, which is not considered a lot of data in modern data storage. Respondent does not object on the basis of burden related to data storage. Comparing these costs to the expected benefits of the discovery, there are significant damages at stake in this litigation. The TCPA awards $500 per violation and $1,500 per willful or knowing violation. Considering the amount in controversy, and the importance of this discovery in determining liability and damages, Samararatne cannot seriously argue that the request is disproportionate.

### iv.   Samararatne's Objection that Documents Are not in his "Possession" Should Be Overruled

Respondent also asserts that documents are not in his possession because MMS is no longer in business. The status of MMS and whether the documents are in his immediate possession is irrelevant. The relevant inquiry is whether the documents are under a party's control, not whether they are in a party's possession. A party responding to a Rule 34 production request is under an affirmative duty to seek responsive documents from its employees, agents, and others subject to its control. *See Valdez v. Genesis Healthcare LLC*, 2:19-cv-00976-DMG-JC, 2021 U.S. Dist. LEXIS 243297, 2021 WL 5589963, at *6 (C.D. Cal. Sept. 7, 2021). Accordingly, these objections should be overruled.

### v.   Samararatne's Objections that he "Already Provided Information to Pelican" Should Be Overruled

Respondent also objects because he claims he has "already provided" information to Pelican. However, whether a party already has the information requested is not a valid objection. *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (A responding party "is required to produce documents he has in his possession, custody or control, regardless of whether he believes plaintiff already has those documents."). Samararatne's involvement is broader than Pelican's. Samararatne must produce documents relating to MMS, MB Holdings, Celtic Marketing, and other entities he acts on behalf of, as well as those created in his personal capacity or other entity. Moreover, given

that Pelican is in violation of a Court Order compelling further responses to Plaintiffs' discovery issued to Pelican, his response merely highlights the insufficiency of his answer.

### vi.   Samararatne's Objections that the Requests Do Not Concern a Party to the Lawsuit Are Unfounded

Respondent also objects that communications to a non-party is not relevant to Plaintiffs' claims. However, the requests bear directly on identifying Gustav Renny's role in setting up sham entities to avoid TCPA liability as to how the Defendants placed illegal calls. The so-called non-parties are the prior versions of Renny's shell companies that dissolved once faced with a class action lawsuit, or otherwise are vendors who have discoverable information related to the Underlying Action. Relevance is broadly construed, and for objections to discovery on relevance grounds, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns*, 257 F.R.D. at 217. Respondent's general objection here as to relevance fails to fulfill its burden.

### vii.   Samararatne's General Objections Are Waived

Samararatne incorporates boilerplate general objections into the responses.  It is well established, however, that objections must be specific to each request, and thus the Court should overrule Respondent's general objections. *See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.").

## V.   THE COURT SHOULD AWARD PLAINTIFFS ATTORNEY'S FEES

Fed. R. Civ. P. 37 provides in relevant part:

> If the [discovery motion] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

*See Brevoort v. G4S Secure Sols. (USA) Inc*., No. CV 20-5432-CJC (PVCx), 2022 U.S. Dist. LEXIS 137704, 2022 WL 3012529, at *5 (C.D. Cal. June 21, 2022). Under Rule

37(a)(5)(A), when the Court finds the opposing party's nondisclosure was substantially unjustified, an award of reasonable attorney's fees is mandatory. *See Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ*., 2:11-cv-3471 KJM AC, 2016 U.S. Dist. LEXIS 109451, 2016 WL 4375015, at *4 (E.D. Cal. Aug. 17, 2016) (noting mandatory nature of Rule 37(a)(5)(A)).

Here, this Motion is necessary only because of Respondent's assertion of boilerplate objections and refusing to meet and confer as required by the Local Rules. Plaintiffs have faced similar obstructionism throughout this case. There is no justification for Samararatne's obstructionism other than for the purposes of concealing illegal robocalling activities from the attention brought to them by Plaintiffs' lawsuit.

Plaintiffs' request for an award of reasonable expenses, including attorney's fees, incurred in bringing the instant Motion to Compel is reasonable. *See Constr. Laborers Trust Funds for S. California Admin. Co. v. D T S Enter., Inc*., No. EDCV 22-867-JGB (KKx), 2023 U.S. Dist. LEXIS 40047 (C.D. Cal. Mar. 8, 2023). Samararatne willfully refused to meet and confer on the telephone, despite several requests, forcing Plaintiffs to file in the form of a motion, contrary to the Court's preference. Accordingly, Plaintiffs requests that the Court award Plaintiffs' attorney's fees for the time incurred in being forced to bring this discovery motion.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court overrule Samararatne's objections, order him to comply with the subpoena, award Plaintiffs attorney's fees, and such other relief as the Court deems appropriate.

Respectfully submitted,

By: /s/ Mark L. Javitch
     Mark L. Javitch (SBN 323729)
     mark@javitchlawoffice.com
     Javitch Law Office
     3 East 3rd Ave. Ste. 200

San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorneys for Plaintiffs*
And those similarly situated

## <u>CERTIFICATE OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF SAN MATEO

 I am 18 years of age and not a party to this action.  I am employed in County of San Mateo, State of California.  My business address is Javitch Law Office, 3 East 3rd Ave. Ste. 200, San Mateo, California, 94401.

 On the dated stated below, I filed this motion to compel, including all declarations and exhibits, via the ECM/CF Case Filing System, which serves all parties of record.

 On the dated stated below, I also sent a copy of this motion to counsel for Samararatne via email and U.S. Priority Mail:

> Stephen D. Dargitz
> 800 North King Street
> Plaza Suite - #1
> Wilmington, DE 19801
> sdargitz@ohaganmeyer.com

 I declare under penalty of perjury that the foregoing is true and correct. Executed on the date stated below at San Mateo County, California.


Date: April 12, 2024     /s/ Mark L. Javitch
             Mark L. Javitch